In the matter of the paper writing purporting to be the will of
JOHANNA COUGHLIN.

[Argued October 18th, 1904. Filed January 31st, 1905.]

1. Where deceased was shown to have been suffering from pneumonia, accompanied by delirium, for three days before and until death ensued, three days after the purported execution of a will, the burden was on the proponent, in a proceeding to probate the will, to show that it was executed while deceased was in a lucid interval with sufficient capacity to make a testamentary disposition of property.

2. In a proceeding to probate a will, evidence *held* to sustain a finding that the alleged will was not executed during a lucid interval of a delirium which had developed previous to the purported execution thereof.

On appeal from Hudson county orphans court.

*Messrs. Collins & Corbin,* for the appellant.

*Mr. Charles C. Kelly,* for the proponents.

MAGIE, ORDINARY.

Johanna Coughlin was admitted to St. Francis hospital November 5th, 1903, suffering from a severe compound fracture of one leg.

The evidence of the hospital physicians renders it clear that on November 10th the patient was attacked by pneumonia, accompanied by delirium of a low muttering character, which gradually increased until she died in the very early morning of November 16th.

The attending physicians differ as to whether the pneumonia was septic in character or not, but both agree on the fact that the disease developed on November 10th, and was accompanied by delirium.

Upon the uncontradicted proof, it is obvious that the proponent of a paper purporting to make a testamentary disposition of property by a patient thus afflicted must sustain the burden of establishing that the paper was executed while deceased was in a lucid interval with capacity sufficient to make such a disposition.

The paper offered for probate was executed in the morning of November 13th. The scrivener who drew the paper testifies that he went to the hospital on that day between nine and ten o'clock A. M., and, sitting by the bedside of the deceased, drew the paper, after ascertaining, as he says, her intentions as to the disposition of her property. He declares that after it was drawn he read the paper to deceased, who assented to it and executed it by making her mark, and in answer to his question, indicated that it was her will and that she desired him and a woman relative, present during the whole interview, to witness the execution of it.

The learned judge of the orphans court, before whom these witnesses were produced and examined, failed to be convinced that their evidence established the existence of a lucid interval of the delirium which had previously developed, and which it is clear existed subsequently and continuously. My review of the evidence has led me to the same conclusion, though with some hesitation. The scrivener had no previous intimacy with the deceased, and lacked the ability of comparing her usual mental state with that which she exhibited in giving instructions to him, which seems to have been mainly done by responses to questions put by him, which responses he admits he is unable to recall or state. The other witness simply testifies to the execution of the paper, and was not examined as to what otherwise took place from which the mental state of deceased might be discovered.

The result is that the decree denying probate was not erroneous, and it must be affirmed.